1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  LESLIE A. POUNDS,                  )
                                       )
11             Plaintiff,              )      Case No. C06-314-BHS-MJB
                                       )
12        v.                           )
                                       )
13  KELLY KING, *et al.*,              )      REPORT AND RECOMMENDATION
                                       )
14             Defendants.             )
    _____)

15                    INTRODUCTION AND SUMMARY CONCLUSION

16        Plaintiff Leslie Pounds is a Washington State prisoner who is currently incarcerated at the

17  Monroe Correctional Complex-Washington State Reformatory Unit ("MCC-WSRU").  He brings

18  this action under 42 U.S.C. § 1983 to allege that the named defendants have denied him adequate

19  medical care in violation of his rights under the Eighth Amendment to the United States Constitution.

20  Plaintiff also alleges that defendants have violated the due process and equal protections rights

21  guaranteed him by the Fourteenth Amendment, that defendants were negligent, and that defendants

22  committed medical malpractice.  Plaintiff identifies as defendants in this action Kelly King and John

23  Loranger, both physician's assistants employed at MCC-WSRU at times relevant to the complaint;

24  David Kenney, M.D., Medical Director at MCC-WSRU; James Champoux, M.D., a contract

25

REPORT AND RECOMMENDATION
26  PAGE - 1

1   physician at MCC-WSRU; and, the Washington Department of Corrections.  Plaintiff seeks

2   declaratory and injunctive relief, and damages.

3          Defendants now move for summary judgment.  This Court, having reviewed defendants'

4   motion, and the balance of the record, concludes that defendants' motion for summary judgment

5   should be granted and that this action should be dismissed with prejudice as to petitioner's federal

6   constitutional claim and without prejudice as to plaintiff's negligence and medical malpractice

7   claims.

8                                      FACTS

9          On December 3, 2003, plaintiff injured his back while working as a machine tool

10  operator/programmer for Microjet, a class I correctional industry. (*See* Dkt. No. 52-2 at 7.)  Plaintiff

11  was able to walk back to his cell after the injury.  (Dkt. No. 50-2 at 23.)  He did not seek immediate

12  medical attention for the injury.  (*See id*.)  On December 7, 2003, four days after the incident,

13  plaintiff asked corrections officers to help him out of bed and take him to the prison hospital.  (*Id*. at

14  24.)  The clinic nurse checked plaintiff's vital signs and called the on-call physician's assistant

15  ("P.A."), John Loranger.  (Dkt. No. 50-3 at 16.)  P.A. Loranger authorized the administration of

16  Toradol, a pain reliever, and Robaxin, a muscle relaxant.  (*Id*.)  Plaintiff was also authorized to

17  receive an extra pillow or blanket to put under his knees to reduce the stress on his back.  (*Id*. at 25.)

18  The Toradol and the extra pillow apparently provided plaintiff some relief.  (*Id*. at 17.)  Plaintiff was

19  directed to return to medical the following day for further evaluation.  (*Id*.)

20         On December 8, 2003, plaintiff was seen in the clinic by P.A. Loranger.  (Dkt. No. 50-3 at

21  46.)  Plaintiff reported to P.A. Loranger that he was experiencing low back pain and that he had a 30

22  year history of similar problems.  (*Id*.)  Plaintiff also reported that the Toradol and Robaxin

23  administered to him the previous day had provided him some significant relief, but that his symptoms

24  had returned when he woke up that morning.  (*Id*.)  Following his examination of plaintiff, P.A.

25

26  REPORT AND RECOMMENDATION
    PAGE - 2

1    Loranger diagnosed low back pain with left paraspinal spasm and developed a treatment plan which

2    included providing plaintiff with nonsteroidal anti-inflammatories and muscle relaxants, a work belt

3    to assist his posture, time off from work.  (Dkt. No. 50-3 at 46.)  Plaintiff was instructed to return in

4    a week if plaintiff continued to experience problems.  (*Id*.)

5            Plaintiff returned to medical on December 16, 2003, and reported that he was continuing to

6    experience back pain.  (*Id*. at 18.)  The nurse who evaluated plaintiff instructed him to continue

7    taking the medications ordered by P.A. Loranger, and to sign up to see a provider if his symptoms

8    persisted or worsened.  (*Id*.)  Plaintiff was seen again by P.A. Loranger on December 18, 2003.  At

9    that time, plaintiff complained of lower back pain and muscle spasms and P.A. Loranger admitted

10   plaintiff to the hospital for treatment.  (*Id*. at 18 and 65.)

11           Following his admission to the hospital, plaintiff was evaluated by Dr. David Kenney.  (*See*

12   *id*. at 36-38.)  Plaintiff received steroid injections and he was also prescribed pain relievers and

13   valium.  (*Id*. at 37-38.)  On December 19, 2003, plaintiff reported to hospital staff that the pain had

14   gotten better since he received the injections.  (*See id*. at 39-40.)  The following day, plaintiff denied

15   experiencing any pain or spasms, and refused pain medication.  (*See id*. at 40-42.)  On December 21,

16   2003, plaintiff again denied having any lower back pain and he was released from the hospital.  (*Id*.

17   at 42.)

18           Because plaintiff was injured while working at a class I correctional industry, he was eligible

19   for industrial insurance benefits as provided by Title 51 of the Revised Code of Washington.  *See*

20   RCW 72.60.102.  On January 8, 2004, P.A. Loranger arranged for plaintiff to come in to fill out a

21   worker's compensation claim form.  (*See id*. at 20 and 65.)  Once completed, the paperwork was sent

22   on to Dr. Kenney for processing.  (*Id*.)

23           On January 21, 2004, plaintiff had another appointment with P.A. Loranger during which

24   plaintiff requested a cane to assist him with his walking.  (*Id*.)  P.A. Loranger prescribed a cane for

25

26   REPORT AND RECOMMENDATION
     PAGE - 3

1   plaintiff's use.  (Dkt. No. 50-3 at 20 and 65.)  P.A. Loranger also noted in plaintiff's record that

2   neither plaintiff nor the medical department had received any word from the Department of Labor

3   and Industries ("L&I") regarding plaintiff's worker's compensation claim and that the medical

4   department would contact L&I to make sure that they had all of the necessary paperwork.[1]  (*Id*. at 20

5   and 65-66.)  Apparently they did not as the record indicates that MCC faxed the worker's

6   compensation form to L&I on January 28, 2004.  (*Id*. at 53-55.)

7       On February 17, 2004, plaintiff saw P.A. Loranger again for a follow-up on his lower back

8   pain.  (*Id*. at 20.)  Plaintiff reported that he had gotten a response from L&I with a claim number and

9   that he was doing about the same.  (*Id*.)  P.A. Loranger noted in plaintiff's medical record that the

10  medical department was going to check on the progress of plaintiff's L&I claim.  (*Id*.)  P.A.

11  Loranger made an entry in plaintiff's medical record on February 20, 2004, indicating plaintiff's

12  worker's compensation claim number.  (*Id*. at 21.)  This is the last entry made by P.A. Loranger in

13  plaintiff's medical records.

14      On March 18, 2004, plaintiff filed a grievance complaining that he had not received adequate

15  medical attention from the MCC-WSRU medical staff for his injured back.  (Dkt. No. 52-2 at 68.)

16  Plaintiff asserted in his grievance that the only care he had been provided was pain medication and

17  promises that other medical procedures had been scheduled.  (*Id*.)  Plaintiff requested that the

18  medical staff follow through with his case and provide him the care he was entitled to through his

19  L&I insurance.  (*Id*.)

20      On March 24, 2004, P.A. Kelly King completed a consultation request for plaintiff to see

21  James Champoux, M.D., an orthopedic surgeon, for evaluation and treatment.  (Dkt. No. 50-3 at 48.)

22  ─────────────────

23      [1]  Plaintiff asserts that P.A. Loranger advised him during this appointment that an MRI had
    been scheduled.  (*See* Dkt. No. 48 at 5.)  Plaintiff's medical records do not reflect this.  However, the
24  Court notes that the portion of the worker's compensation form completed by P.A. Loranger does
    contain a recommendation for an MRI.  (Dkt. No. 50-3 at 51.)
25

    REPORT AND RECOMMENDATION
26  PAGE - 4

On March 30, 2004, P.A. King met with plaintiff to discuss the progress of his L&I claim.  (Dkt. No. 50-3 at 21.)  On the same date, P.A. King completed a consultation request for plaintiff to receive an MRI of his lumbar spine at Valley General Hospital and she requested that plaintiff receive a pre-MRI x-ray of his face to check for foreign bodies; *i.e.*, metal.  (*Id*. at 49 and 57; Dkt. No. 52-2 at 42-44.)  P.A. King also issued a Health Status Report authorizing plaintiff to receive a work belt, a cane, extra pillows, an extra blanket, and a foam wedge. (Dkt. No. 50-3 at 28.)  The requested x-rays were taken on March 31, 2004, and the MRI was performed on April 12, 2004.  (Dkt. No. 52-2 at 44-45.)

Plaintiff was seen by Dr. Champoux on May 14, 2004.  (Dkt. No. 50-3 at 62.)  After examining plaintiff, and reviewing the MRI, Dr. Champoux diagnosed plaintiff with "multi-level degenerative disk disease lumbar spine." (*Id*.)  Dr. Champoux then reviewed with plaintiff the role of regular aerobic conditioning and oral anti-inflammatory medication in his treatment. (*Id*.)  Dr. Champoux indicated in his report that he did not believe additional diagnostic tests were indicated at that time. (*Id*.)

On May 18, 2004, shortly after plaintiff's appointment with Dr. Champoux, the Department of Labor and Industries closed plaintiff's claim on the grounds that plaintiff's medical record indicated that treatment for the claim had been concluded. (Dkt. No. 52-2 at 83.)  Plaintiff requested that the decision to close his claim be reconsidered.  (Dkt. No. 52-3 at 11.)  Plaintiff's request for reconsideration was initially denied because plaintiff's attending physician had not provided the Department of Labor and Industries with any record of needed treatment for plaintiff's injury.[2] (*Id*. at 14.)  However, plaintiff appealed and the order closing plaintiff's claim was cancelled. (*Id*. at 15-16.)

---

[2]  The record reflects that on April 21, 2004, the Department of Labor and Industries sent a letter to Dr. Champoux requesting an up to date medical report regarding plaintiff's condition. (Dkt. No. 52-2 at 81.)  Dr. Champoux had not yet evaluated plaintiff at the time of that request.  It appears that Dr. Champoux never responded in any fashion to the request from L&I.

REPORT AND RECOMMENDATION
PAGE - 5

1  Plaintiff's claim apparently remains open at this time.  The Court notes that plaintiff appears to have

2  an attorney assisting him with his L&I claim at this juncture.

3          On October 31, 2006, plaintiff was evaluated by John Maxwell, M.D. (*See* Dkt. No. 52-3 at

4  18-24.)  That evaluation was apparently conducted at the request of the Department of Labor and

5  Industries.  (*See id*.)  Dr. Maxwell noted that plaintiff was fairly functional and that he had been on

6  an exercise program for a long period of time.  (*Id*. at 23.)  He further noted that there were

7  preexisting degenerative changes of the spine and that there were some signs of nerve root

8  impingement.  (*Id*., at 23.)  Dr. Maxwell indicated that the prospects for improvement were marginal

9  and he questioned whether any surgeon would feel comfortable operating on plaintiff's back.  (*Id*.)

10  Dr. Mawell recommended that plaintiff be evaluated by a neurosurgeon for consideration of whether

11  surgery was a viable option given the nature of plaintiff's back problem.  (*Id*.)

12          On March 28, 2007, a second MRI was performed on plaintiff's back and, on May 29, 2007,

13  Sanford J. Wright, Jr., M.D., conducted a neurological consultation.  (Dkt. No. 50-3 at 6-8.)  It

14  appears from the record that plaintiff's evaluation by Dr. Wright was done pursuant to plaintiff's

15  request.  (*See* Dkt. No. 50-2 at 37.)  Dr. Wright noted that he saw no immediate indication for

16  surgery and recommended that plaintiff be given an opportunity to have physical therapy.  (Dkt. No.

17  50-3 at 8.)  Dr. Wright also noted that the more recent MRI was very comparable to the 2004 MRI

18  scan films.  Dr. Wright, it appears, referred plaintiff to the Rehabilitation, Sports & Spine Center.

19  (*Id*. at 10.)  Plaintiff was evaluated there by Thomas Seib, M.D. in July 2007.  (*Id*. at 10-12.)  Dr.

20  Seib recommended physical therapy.  (*Id*. at 11.)  Dr. Seib also suggested that plaintiff be re-

21  evaluated for other treatments after the physical therapy sessions.  (*Id*.)

22          Plaintiff filed the instant action in Snohomish County Superior Court in January 2006.  (*See*

23  Dkt. No. 1.)  Defendants removed the case to this Court in March 2006.  Defendants filed their

24  summary motion on September 21, 2007.  (Dkt. No. 50.)  Plaintiff has filed a response to defendants'

25

26  REPORT AND RECOMMENDATION
    PAGE - 6

motion (Dkt. No. 52) and defendants' have filed a reply brief in support of their summary judgment motion (Dkt. No. 53).  Defendants' motion for summary judgment is now ripe for review.

## Summary Judgment

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there exists "no genuine issue as to any material fact" such that "the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is a fact relevant to the outcome of the pending action.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Genuine issues of material fact are those for which the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."  *Id.*

In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case.  *See* Fed. R. Civ. P. 56(e).  A mere scintilla of evidence is insufficient to create a factual dispute.  *See Anderson*, 477 U.S. at 252.

## Claim One:  Eighth Amendment

Plaintiff alleges in his second amended complaint that defendants P.A. Loranger, Dr. Champoux, and Dr. Kenney have violated his rights under the Eighth Amendment by denying him timely and appropriate medical treatment for his lower back injury.  Plaintiff contends that these defendants, because of their failure to act, have caused him months of prolonged pain and suffering which constitutes deliberate indifference.

The Eighth Amendment imposes a duty upon prison officials to provide humane conditions of confinement.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  This duty includes ensuring that inmates receive adequate medical care.  *Id*.  In order to establish an Eighth Amendment violation, a prisoner must satisfy a two-part test containing both an objective and a subjective component.  The

REPORT AND RECOMMENDATION
PAGE - 7

Eighth Amendment standard requires proof that (1) the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation; and (2) the prison official acted with a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. at 834. The objective component of an Eighth Amendment claim is "contextual and responsive to 'contemporary standards of decency'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)(quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The state of mind requirement under the subjective component of the Eighth Amendment standard has been defined as "deliberate indifference" to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. at 834.

Defendants argue in their summary judgment motion that plaintiff has not demonstrated that they were deliberately indifferent to a serious medical need and that plaintiff's Eighth Amendment claim must therefore be dismissed. Defendants offer in support of their summary judgment motion excerpts from plaintiff's deposition, plaintiff's responses to defendants' interrogatories and requests for production, copies of plaintiff's medical records, and the declaration of P.A. Loranger.

Plaintiff argues in his response in opposition to defendants' summary judgment motion that the care he received from defendants was inadequate because the only treatment defendants provided for his injury was pain medication which did not relieve his pain. Plaintiff contends that defendants refused to conduct the tests that plaintiff's symptoms called for, and that they delayed his access to medical personnel qualified to exercise judgment about his specific medical problem. Plaintiff offers in support of his opposition brief his own declaration and exhibits which include copies of his Department of Corrections medical records, reports from physicians outside the Department of Corrections, and plaintiff's personal medical journal.

The record before the Court establishes that plaintiff first sought care for his back pain four days after he sustained the injury. (*See* Dkt. No. 50-2 at 22-23.) Plaintiff was treated by a nurse and, according to plaintiff's own report, that treatment provided some relief. (*Id.* at 24-25; Dkt. No. 50-3

REPORT AND RECOMMENDATION
PAGE - 8

at 16-17.)  Plaintiff was seen the next day by P.A. Loranger who provided medication, a work belt, and time off from work.  (Dkt. No. 50-3 at 46.)  When plaintiff returned to P.A. Loranger ten days later with muscle spasms and ongoing pain, plaintiff was admitted to the hospital for treatment.  (*Id*. at 18.)  Dr. Kenney evaluated plaintiff following his admission to the hospital and provided steroid injections and pain medication.  (*Id*. at 36-38.)  On the second day of his hospitalization, plaintiff refused all pain medications, and plaintiff was released from the hospital on the fourth day after reporting that his pain was resolved.  (*Id*. at 40-42.)  Plaintiff was subsequently provided with a cane, an MRI, and an evaluation by an orthopedic surgeon who recommended conservative treatment in the form of aerobic conditioning and oral anti-inflammatory medication.  (*See id*. at 27-28 and 59-62.)

Plaintiff complains that defendants efforts at pain management were not effective.  However, the medical records provided by the parties reveal that on the occasions when plaintiff sought treatment for pain, he received treatments which did, in fact, provide him some relief.  Plaintiff also complains that he did not receive an MRI until approximately four months after he suffered his injury.  While this is true, plaintiff offers no evidence that this delay resulted in serious injury or subjected him to any unnecessary pain.

Plaintiff contends that he should have been given access to outside medical providers who could have provided him specialized care for his injury.  However, at his deposition, plaintiff admitted that he never asked any of the defendants to make an appointment for him with a doctor outside the institution.  (Dkt. No. 50-2 at 37-38.)  Plaintiff also admitted that defendants never prevented him from getting the second opinion he wanted regarding his condition, they simply did not do anything to assist him in obtaining one.  (*Id*. at 38-39.)  Plaintiff offers no authority to support the proposition that defendants had an obligation to assist him in obtaining outside medical care for a

REPORT AND RECOMMENDATION
PAGE - 9

1    condition that they were able to treat.[3]

2        Finally, plaintiff contends that he never received any physical therapy for his back injury

3    despite a number of recommendations from his medical providers that he receive such treatment.

4    However, the record is devoid of any evidence that plaintiff ever pursued such treatment through the

5    Department of Corrections.

6        While plaintiff clearly believes that defendants did not do enough to treat his back injury,

7    there  is simply no evidence in the record that defendants were deliberately indifferent to plaintiff's

8    medical needs.  Accordingly, defendants are entitled to summary judgment with respect to plaintiff's

9    Eighth Amendment claim.

10                        Claim Two:  Fourteenth Amendment

11       Plaintiff alleges in his second amended complaint that P.A. King, P.A. Loranger, Dr. Kenney,

12   and Dr. Champoux violated his rights to due process and equal protection when they deprived him of

13   rights and entitlements under the Worker's Compensation laws without fair notice or a hearing.

14       *1.    Due Process*

15       The Fourteenth Amendment provides that no state shall deprive any person of life, liberty or

16   property without due process of law.  The essence of plaintiff's due process claim is that defendants

17   deprived him of a property interest when they mismanaged his L&I claim.  Plaintiff contends that

18   when defendants assumed the responsibility of providing care for his industrial injury, they also

19   assumed responsibility for managing his L&I claim.  Plaintiff contends that defendants mismanaged

20   his L&I claim which resulted in the closure of the claim and the denial of benefits under RCW Title

21   _____

22       [3] Plaintiff suggested at his deposition that a specialist may have been able to provide different
     treatment than that provided by defendants, but he could not explain what he thought a specialist
23   might be able to provide that defendants could not.  (*See* Dkt. No. 50-2 at 41-42.)  Moreover, even
     assuming a specialist did recommend some different form of treatment, differing opinions on medical
24   treatment do not amount to a violation under the Eighth Amendment.  *See Sanchez v. Vild*, 891 F.2d
     240, 242 (9th Cir. 1989).
25

     REPORT AND RECOMMENDATION
26   PAGE - 10

51.

There is some support in the record for plaintiff's contention that defendants mismanaged his L&I claim.  Pursuant to RCW 51.36.060, physicians attending injured workers are required to "make such reports as may be requested by the department . . . upon the condition or treatment of any such worker."  Dr. Champoux was identified to the Department of Labor and Industries as one of plaintiff's doctors.  (*See* dkt. No. 52-2 at 79.)  On April 21, 2004, the Department of Labor and Industries sent Dr. Champoux a request for an updated medical report regarding plaintiff's condition.  (*See* Dkt. No. 52-2 at 81.)  Dr. Champoux apparently never responded to that request and, as a result, plaintiff's L&I claim was closed on May 18, 2004.  (*See* Dkt. No. 52-3 at 14.)  Arguably, Dr. Champoux did mismanage plaintiff's L&I claim when he failed to fulfill his duties under RCW 51.36.060.  However, as defendants correctly point out, plaintiff's L&I claim was subsequently reopened.  Plaintiff offers no evidence that he was denied any benefits to which he was entitled under RCW Title 51 as a result of defendants' "mismanagement" of his claim.  Accordingly, defendants are entitled to summary judgment with respect to plaintiff's due process claim.

### 2.    *Equal Protection*

In order to state an equal protection claim under § 1983, a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  Plaintiff contends that as an inmate working in a class I correctional industry he was a member of a protected class and he was entitled to the full benefits available under RCW Title 51.  Plaintiff appears to be of the belief that defendants' alleged mismanagement of his L&I claim denied him his right to equal protection.  However, plaintiff offers no authority for the proposition that he was a member of a protected class.  Moreover, plaintiff offers no evidence demonstrating that any of the defendants knowingly or intentionally discriminated against him.  Finally, as noted above, plaintiff

REPORT AND RECOMMENDATION
PAGE - 11

has not established that he has been denied any benefits to which he is entitled under RCW Title 51 as a result of defendants' conduct. Accordingly, defendants are entitled to summary judgment with respect to plaintiff's equal protection claim as well.

Claims Three, Four and Five:  Negligence/Medical Malpractice

Plaintiff alleges in his complaint that defendants not only violated federal law, but violated state law as well. The Supreme Court has stated that federal courts should refrain from exercising their pendent jurisdiction when the federal claims are dismissed before trial. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Because defendants are entitled to summary judgment with respect to plaintiff's federal constitutional claims, plaintiff's state law claims should be dismissed without prejudice.

CONCLUSION

For the reasons set forth above, this Court recommends that defendants' motion for summary judgment be granted and that this action be dismissed with prejudice as to plaintiff's Eighth and Fourteenth Amendment claims, and without prejudice as to plaintiff's negligence and medical malpractice claims. A proposed order accompanies this Report and Recommendation.

DATED this 22nd day of January, 2008.

MONICA J. BENTON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 12